## <u>EXHIBIT B</u>

**Copy of Cheeseman Opinion Dated January 9, 2025**

# FEDERAL COURT OF AUSTRALIA

## Ligon 158 Pty Limited (in liq) v Shield Holdings Australia Pty Ltd (in liq) (Special Purpose Liquidator) [2025] FCA 3

| | |
|---|---|
| File number(s): | NSD1023 of 2022 |
| Judgment of: | **CHEESEMAN J** |
| Date of judgment: | 9 January 2025 |
| Catchwords: | **CORPORATIONS** – application for appointment of an additional (special purpose) liquidator – where the proposed special purpose liquidator is the general purpose liquidator of other related corporate entities – where the proposed special purpose liquidator brought a successful application to reinstate the company to the register and have it wound up but was unsuccessful in his application to be appointed as the general purpose liquidator of that company due to the potential for conflict of interest – where interested parties, being the director and shareholder of the company, oppose the appointment of a special purpose liquidator – where the relevant context includes documented settlements of proceedings, one such deed which is the subject of challenge in proceedings at early stage – where the potential utility of the appointment depends amongst other things on the validity of the settlement deed – where the special purpose is closely confined and is directed to the efficient performance of investigations into the affairs of the company – where the general purpose liquidator of the company supports the application for the appointment of the special purpose liquidator – whether to appoint the special purpose liquidator – Held: application granted. |
| Legislation: | *Corporations Act 2001* (Cth), ss 472, 483, 601AB<br>*Corporations Act 2001* (Cth), Schedule 2 — Insolvency Practice Schedule (Corporations), ss 5-30(a)(ii), 90-15(1), 90-15(3)(c), 90-20 |
| Cases cited: | *HIH Underwriting Holdings Pty Ltd v FAI (CTP) Pty Ltd* [2015] NSWSC 2137<br>*Lewis v Battery Mineral Resources Ltd (in liq)* [2021] FCA 963<br>*Ligon 158 Pty Limited (in liq) v Shield Holdings Australia Pty Limited (de registered)* [2024] FCA 144<br>*Re Obie Pty Ltd (in liq) (No 4)* (1984) 8 ACLR 967 |

*Re One.Tel Limited* [2009] NSWSC 1172; 262 ALR 150
*Re Spedley Securities Ltd (in liq)* (1991) 4 ACSR 555
*Shangri-La Construction Pty Ltd v GVE Hampton Pty Ltd (in liq)* [2021] VSC 161

| | |
|---|---|
| Division: | General Division |
| Registry: | New South Wales |
| National Practice Area: | Commercial and Corporations |
| Sub-area: | Corporations and Corporate Insolvency |
| Number of paragraphs: | 61 |
| Date of last submission/s: | 30 October 2024 |
| Date of hearing: | 13 June 2024, 19 July 2024, 25 July 2024, 6 September 2024, 20 September 2024 |
| Counsel for the Plaintiffs: | Mr B Roberts KC (13 June 2024, 25 July 2024, 6 September 2024 and 20 September 2024) and Mr L Wicks (13 June 2024, 19 July 2024, 25 July 2024 and 20 September 2024) |
| Solicitor for the Plaintiffs: | Iles Selley Lawyers |
| Counsel for the First and Third Defendants: | Mr DR Stack (13 June 2024), Mr SD Puttick (19 July 2024, 25 July 2024 and 20 September 2024) and Mr J Nolan (6 September 2024) |
| Solicitor for the First and Third Defendants: | Ashurst |
| Counsel for the Second Defendant: | The Second Defendant did not appear |
| Counsel for the Interested Party (Mr Andrew Binetter): | Mr S Golledge SC |
| Solicitor for the Interested Party (Mr Andrew Binetter): | Pitcher Partners |
| Counsel for the Interested Party (Mr Michael Binetter): | Mr C D Freeman (13 June 2024 and 20 September 2024) |
| Solicitor for the Interested Party (Mr Michael Binetter): | Braddon Marx |

# ORDERS

**NSD1023 of 2022**

**BETWEEN:**      **LIGON 158 PTY LIMITED (IN LIQUIDATION) ACN 003 464 015**
First Plaintiff

**ERMA NOMINEES PTY LIMITED (IN LIQUIDATION) ACN 000 957 040**
Second Plaintiff

**ERBIN FINANCES PTY LIMITED (IN LIQUIDATION) ACN 138 259 800** (and others named in the Schedule)
Third Plaintiff

**AND:**      **SHIELD HOLDINGS AUSTRALIA PTY LIMITED (IN LIQUIDATION) ACN 078 881 035**
First Defendant

**AUSTRALIAN SECURITIES & INVESTMENTS COMMISSION**
Second Defendant

**ALAN WALKER**
Third Defendant

**ORDER MADE BY:**   **CHEESEMAN J**

**DATE OF ORDER:**   **9 JANUARY 2025**

## THE COURT ORDERS THAT:

1.      Pursuant to s 472 of the *Corporations Act 2001* (Cth), John Sheahan, registered liquidator be appointed as an additional liquidator (**Special Purpose Liquidator**) to the First Defendant to:

   (a)      obtain orders for delivery up (including by any banker) pursuant to s 483 of the Act of any books relating to the affairs of the First Defendant;

   (b)      conduct depositions or examinations and obtain orders for production of documents in any foreign jurisdiction; and

   (c)      do anything necessarily incidental thereto,

   for the purpose of:

   (d)      identifying the assets of the First Defendant and the location of those assets; or

(e)     investigating potential claims which are or may be available to the First Defendant or a liquidator of the First Defendant against any third parties.

2.     Pending further order of the court, the Special Purpose Liquidator may not, without leave of the Court:

(a)     commence or prosecute any action in the name of the First Defendant or as Special Purpose Liquidator of the First Defendant other than proceedings to enable him to do any of the things in order 1 above;

(b)     use any funds of the First Defendant or assert any entitlement to be paid out of funds of the First Defendant in respect of his appointment as Special Purpose Liquidator of the First Defendant.

3.     The Special Purpose Liquidator shall confer with and take into account the views of the Third Defendant (the **General Purpose Liquidator**) prior to doing any of the things in order 1 above and promptly report to the General Purpose Liquidator on any thing done pursuant to order 1.

4.     The Special Purpose Liquidator has liberty to apply to the Court on seven days' notice, with notice to be given to interested parties, the General Purpose Liquidator and ASIC, in respect of the leave identified in order 2.

5.     Subject to order 6, the plaintiffs costs and 50% of the costs of the interested parties be costs in the liquidation of the First Defendant.

6.     In the event that any party or interested person seeks to apply for an alternative costs order, the following timetable will apply:

(a)     By 15 January 2025, any party or interested person seeking an alternative costs order is to file and serve written submissions limited to two pages outlining the alternative costs order sought, together with any evidence in support;

(b)     By 20 January 2025, any party or interested person seeking to oppose the making of an alternative costs order is to file and serve written submissions limited to two pages outlining the basis of opposition, together with any evidence in support;

(c)     By 22 January 2025, any submissions in reply limited to one page and or any evidence in reply is to be filed and served;

(d)     Any application for an alternative costs order will be determined on the papers;

(e)    Any submissions and evidence filed and served pursuant to this order must be emailed to the Associate to Cheeseman J at the time they are served; and

(f)    In the absence of an application being made in accordance with this order, within the timeframes stipulated, order 5 will take effect.

7.    These orders be entered forthwith.

Note:  Entry of orders is dealt with in Rule 39.32 of the *Federal Court Rules 2011*.

# REASONS FOR JUDGMENT

**CHEESEMAN J:**

**INTRODUCTION**

1    These reasons address the interlocutory process filed on 16 April 2024 by the plaintiffs which was opposed by the two interested parties. These reasons assume familiarity with the **primary reasons** for judgment delivered on 6 March 2024: *Ligon 158 Pty Limited (in liq) v Shield Holdings Australia Pty Limited (de registered)* [2024] FCA 144 and adopt the terms defined therein.

2    This application is directed to the appointment of Mr John Sheahan as a special purpose liquidator (**SPL**) of Shield.

3    For the reasons set out in the primary reasons, I made orders at the instigation of the plaintiffs requiring ASIC to reinstate the registration of Shield and upon its reinstatement, that it be wound up. I made those orders over the opposition of the interested parties, Mr Andrew Binetter, the former sole director of Shield, and Mr Michael Binetter, the sole shareholder of Shield. Shield was deregistered on 1 November 2020 as a result of administrative action taken by ASIC pursuant to s 601AB of the Act following the default of its sole director, Andrew Binetter. Shield was not wound up under an external administrator. I was satisfied that the reinstatement and thereafter winding up of Shield are necessary to enable the investigation and potentially the pursuit of claims available to Shield to effect recoveries for the benefit of the plaintiffs' creditors. The relevant principal external creditor of the corporate plaintiffs is the Commissioner.

4    At that time, I dismissed the plaintiffs' application for orders appointing Mr Sheahan as liquidator of Shield and afforded the plaintiffs the opportunity to identify a liquidator other than Mr Sheahan.

5    The plaintiffs had contended that Mr Sheahan was uniquely placed to act as liquidator of Shield because he has been, and continued to be, actively engaged in investigating the affairs of the corporate plaintiffs and pursuing recoveries. His involvement in such work included tracing the connections between the entities and persons involved in the wider Binetter group and spanned a number of years and included work undertaken in Australia and the United States. Mr Sheahan in his role as liquidator of other entities in the Binetter group has been at the helm

of substantial litigation which has resulted in major recoveries. However, he has also been involved in the settlement of some of that litigation including as a party to a deed giving effect to the settlement (the Binetter Entities' Deed, as defined in the primary reasons). The likelihood is that the Binetter Entities' Deed, its effect and whether it is liable to be set aside, will be the subject of controversy. In those circumstances, and for reasons more fully set out in the primary reasons, I was satisfied that it was not appropriate to appoint Mr Sheahan as the liquidator of Shield because of the potential for a conflict including a conflict between his own interests and those of Shield.

6       The impasse in relation to the identity of the liquidator was resolved by the appointment of Mr Alan Walker as liquidator of Shield on 5 April 2024. In order to take any substantive steps in the winding up of Shield, Mr Walker will require funding. The course of the present interlocutory application has been influenced by the steps taken to address the lack of funding available to Mr Walker.

7       The plaintiffs by the present interlocutory application seek to have Mr Sheahan appointed as a special purpose liquidator of Shield (**Shield SPL**), additional to Mr Walker, who will continue as the general purpose liquidator of Shield. The interested parties oppose the application. The position in relation to potential creditors who may be impacted, whether directly or indirectly via the provision of funding, is that they neither consent nor oppose the application. The only evidence led in relation to such creditors is from the Commissioner and Polczynski Robinson, a firm of solicitors who is a creditor of Ligon 158.

8       The procedural course of this application has been convoluted, having been before the Court now on five occasions. The plaintiffs have recast their position on several occasions in response to unfolding developments in the dealings between the Commissioner, the primary creditor of the corporate plaintiffs, the interested parties and those related to them, and Mr Walker, the liquidator of Shield.

9       The principal variable has been the Commissioner's stance in relation to the relief sought by the plaintiffs. The Commissioner's position is significant because the Commissioner is the principal creditor of the plaintiffs, has agreed to fund the investigations into the affairs of Shield that are proposed and is likely the principal ultimately interested in the winding up of Shield. For these reasons, the Commissioner's attitude to the plaintiffs' application is a material consideration for the Court in the exercise of its discretion.

10      The Commissioner's stance has been influenced by the interested parties' allegation that by supporting the plaintiffs' application the Commissioner is in breach of the Commissioner's Deed (as defined in the primary reasons). The Commissioner's Deed is not in evidence in this proceeding – see primary reasons [77]. In this application, the parties have acted on the basis that the Commissioner's Deed requires those bound by it to engage in specified dispute resolution processes mandated under the deed in the first instance. The dispute resolution process appears to have been engaged in about July 2024 and so far as the Court is aware is ongoing.

11      The second variable has been the approach in relation to whether and if so by whom any application to challenge the validity of the Binetter Entities' Deed will be made. The plaintiffs initially contemplated that Mr Walker may institute proceedings directed to this objective funded by the plaintiffs but when Mr Walker confirmed that he did not intend to do so, the plaintiffs themselves instituted a separate proceeding in the South Australian registry by which they seek to, in effect, set aside the Binetter Entities' Deed. The South Australian proceeding is addressed further below.

12      A final round of written submissions responding to the latest positions taken by the plaintiffs, Mr Walker and the interested parties was provided on the basis that the application would be determined on the papers. The Court acknowledges the pragmatic approach adopted by counsel appearing for the interested parties, who could, on several occasions, have pressed to have the application determined on the evidence as it then stood but did not do so. Had this approach not been taken by counsel for the interested parties, it is likely that there would have been a series of fresh interlocutory applications filed by the plaintiffs responding to the changed circumstances as they materialised which would likely have resulted in additional costs being incurred for no real benefit.

13      As now framed, the plaintiffs seek to have significantly circumscribed powers conferred on Mr Sheahan if they succeed in having him appointed as Shield SPL, compared to those for which they originally agitated. The plaintiffs contend that it is appropriate for the Court to make the orders for which they now contend because it is the best way of preserving the status quo pending the resolution of the dispute between the Commissioner and the interested parties and until the controversy concerning the validity of the Binetter Entities' Deed is resolved. Mr Walker supports the plaintiffs in respect of the relief as now framed. Critically, the Commissioner neither supports nor opposes the plaintiffs' application. The Commissioner

suggested when communicating his position to the plaintiffs that because Mr Walker now consented to the appointment of a SPL, that it was no longer necessary for the Commissioner to express a view. The plaintiffs' entreaty to the Commissioner to provide an update as to the dispute resolution process with the interested parties and if possible, to provide an unqualified statement of support for the plaintiffs' application, does not appear to have borne fruit on the basis of the evidence before me. The interested parties oppose the plaintiffs' application.

14  Andrew Binetter has taken the running on the application, with Michael Binetter relying on Andrew Binetter's final submissions.

15  ASIC has been notified of the application and has confirmed that it does not wish to be heard save as to costs.

## BACKGROUND

16  The Commissioner initially supported the plaintiffs' application to have Mr Sheahan appointed as Shield SPL. Mr Walker indicated that he did not intend to commence any process to determine the enforceability or otherwise of the Binetter Entities' Deed.

17  The Commissioner changed his position after Andrew Binetter notified the Commissioner that he had allegedly breached the Commissioner's Deed. In these circumstances, the Commissioner "reluctantly decided that it [was] necessary to, at least temporarily, suspend his support" of the plaintiffs' application to enable the Commissioner to consider his legal position further. This resulted in the plaintiffs' application being adjourned. By late October 2024, the Commissioner's position was that he neither supports nor opposes the plaintiffs' application. As mentioned, it appears that the dispute resolution process in which the Commissioner is engaged is continuing.

18  Irrespective of the outcome of any dispute between the interested parties and the Commissioner, Mr Walker as liquidator is obliged to preserve the property of Shield, including the preservation of relevant claims.

19  Mr Binetter's initial response to Mr Walker's request that he submit a Report on Company Activity and Property (**ROCAP**) was that he did not believe he had access to any records of Shield and requested an extension. On 20 August 2024, Mr Walker received the ROCAP (and its enclosures).

20    A further deed of release and discharge between, amongst others, Shield in its own right and
as trustee for the Shield Holdings Trust and Andrew Binetter and Samantha Kelliher (Andrew
Binetter's spouse, and a director of Ligon 158 and Erma at the time of entry into the Binetter
Entities' Deed) dated 12 November 2018 (the **Shield Deed**) was disclosed as an annexure to
the Shield ROCAP. Mr Sheahan deposed in his affidavit of 4 October 2024 that he had not
seen the Shield Deed prior to receiving a complete copy of Andrew Binetter's ROCAP from
Mr Walker's office on 3 October 2024. In the correspondence that is in evidence, Mr Sheahan's
solicitors raise concerns, which I understand to be directed to questioning the provenance of
Shield Deed, based on the form of the deed and also the fact that Mr Sheahan was not aware
of the existence of the deed in the circumstances of his role at the time when the deed appears
on its face to have been executed, or proximate thereto.

21    A purported effect of the Shield Deed is a release by Shield of Andrew Binetter and every
company in which Andrew Binetter or Michael Binetter is or has been a director. The Shield
Deed does not on its face effect any release of claims which Shield might have against non-
Binetter family members and related entities. The Shield Deed purports to have released
(amongst others) Andrew Binetter from any "Loans" (as defined) that Shield has or may
previously have advanced to him and also released him from any "Claims" (as defined) that
Shield may have had against him. Having regard to the date of execution on the face of the
deed, Mr Walker submits that limitation periods for (at least some) potential claims will soon
expire. The plaintiffs submit that the mere existence of the Shield Deed does not gainsay the
need for investigation of claims generally.

22    On 4 October 2024, Mr Sheahan caused the four plaintiffs and Ligon 159 (another entity of
which Mr Sheahan is the liquidator) to commence proceedings in this Court in the South
Australian registry (the **SA Proceeding**). The plaintiffs in the SA Proceeding seek to set aside
the Binetter Entities' Deed. The plaintiffs contend that clauses of the Binetter Entities' Deed
purporting to release claims for breach of fiduciary duties against Shield are void and
unenforceable.

23    In addition to proceedings in this Court, there is ongoing litigation in the United States
involving those concerned in the proceedings in this Court. On 16 November 2023,
Mr Sheahan, acting in his capacity as liquidator of Ligon 158 and other Binetter entities, issued
a subpoena to produce documents and to examine Andrew Binetter in the United States
Bankruptcy Court (the **United States Proceeding**). To date, it appears that Mr Binetter has not

complied with the subpoena. On 22 July 2024, Mr Sheahan filed a motion to compel Andrew Binetter to produce documents in response to the subpoena. The documents sought include documents and communications referring to or relating to Shield and the Shield Holdings Trust. The motion to compel was heard on 8 October 2024. No orders were made at that time. It appears that an issue in the United States Proceeding is whether Mr Sheahan has capacity to compel production of documents from Shield and that further submissions are to be filed in the United States Proceeding as to whether it is equitable for Mr Sheahan, for the purpose of conducting other functions, to be able to compulsorily obtain documents from an entity to which another liquidator, Mr Walker, is appointed.

24    Mr Sheahan continues to conduct his investigations in relation to other Binetter entities.

**EVIDENCE**

25    The plaintiffs rely on the following affidavits:

(1)    Mr Sheahan, affirmed 16 April 2024 and 4 October 2024;

(2)    Mr Nicholas Fryer, affirmed 27 June 2024;

(3)    Mr Walker, affirmed 19 September 2024;

(4)    Ms Charlotte Thomas, solicitor for the plaintiffs, affirmed 12 June 2024, 16 July 2024, 17 July 2024 and 30 October 2024; and

(5)    Mr Matthew Selley, solicitor for the plaintiffs, sworn on 5 September 2024.

26    The plaintiffs also read the affidavits of Mr Sheahan affirmed 25 November 2022 and Ms Cheryl Westin sworn on 2 February 2023, which are addressed in the primary reasons.

27    The plaintiffs tendered correspondence dated 12 June 2024 from Polczynski Robinson, a creditor of Ligon 158 and other Binetter entities, to Mr Fryer indicating that they neither consented to nor opposed the plaintiffs' application. The plaintiffs also tendered correspondence dated 18 July 2024 from the Australian Government Solicitor to Ms Thomas, enclosing a letter sent on behalf of the Commissioner by which the Commissioner suspended his support for the plaintiffs' application.

28    Mr Walker relies on his three affidavits sworn on 24 July 2024, 19 September 2024 and 8 October 2024. He also tenders exhibit AW-1 to his third affidavit.

29    Andrew Binetter relies on the affidavit of his solicitor, Christopher Ardagna, affirmed 22 October 2024 and exhibit CA-1.

30    Michael Binetter did not lead any evidence and adopts the submissions made by Andrew
Binetter.

## APPLICABLE PRINCIPLES

31    The applicable principles are well established and were not in dispute. They may be briefly
stated.

32    Section 90-15(3)(c) of the *Insolvency Practice Schedule (Corporations)* (Sch 2 to the Act)
(**IPS**) empowers the Court to appoint a SPL. The Court may make orders to appoint an SPL
under s 90-15 of its own initiative or on an application under s 90-20 by a person with a
financial interest in the external administration of the company: *Shangri-La Construction Pty
Ltd v GVE Hampton Pty Ltd (in liq)* [2021] VSC 161 at [79] (Connock J). Under s 5-30(a)(ii)
of the IPS, a creditor of a company is a person with a financial interest in the external
administration of a company.

33    Section 472 of the Act authorises the appointment of a liquidator on a winding up order and
the subsequent appointment of an additional liquidator, including a SPL: *HIH Underwriting
Holdings Pty Ltd v FAI (CTP) Pty Ltd* [2015] NSWSC 2137 at [22] (Brereton J), citing *Re Obie
Pty Ltd (in liq) (No 4)* (1984) 8 ACLR 967 at 971 (Thomas J); *Re Spedley Securities Ltd (in
liq)* (1991) 4 ACSR 555 (Young J); and *Re One.Tel Limited* [2009] NSWSC 1172; 262 ALR
150 (Barrett J).

34    The principles applicable to the appointment of an SPL were summarised by Griffiths J in
*Lewis v Battery Mineral Resources Ltd (in liq)* [2021] FCA 963 at [79]ff. I gratefully adopt
and apply those principles in what follows.

35    I note that although the power conferred by s 90-15(1) does not include the express constraint
that it must be just and beneficial to appoint a SPL that was included under the former section
(s 511 of the Act, now repealed), the authorities in this Court and the Supreme Court of New
South Wales confirm that the Court will weigh whether it is just and beneficial to exercise the
power before doing so. The applicant will generally, if not invariably, have to satisfy the Court
that it would be just and that there is sufficient utility to the external administration before an
SPV will be appointed. That said, s 90-15(1) is framed in broad terms and regard must be had
to the particular circumstances before the court. The authorities confirm that it is common for
a SPL to be appointed in circumstances where the investigations which are required to be

undertaken require funding, the provision of which is conditional on the appointment of a different liquidator.

36    The specific considerations that inform the broad assessment of whether it is just and beneficial to appoint a SPL include that: (1) there are matters that require investigation by a liquidator with a view to possible recovery for creditors; (2) the current liquidators have insufficient funds and insufficient prospects of obtaining funding to pursue an investigation; (3) a creditor is prepared to fund investigations and recovery actions but only on the condition that another liquidator be appointed; and (4) such an appointment would be beneficial to the winding up and the creditors as a whole.

37    The authorities confirm that it is necessary to identify with specificity the "special purposes" (or powers) for which the appointment of the SPL is sought. As illustrated in the authorities identified by Griffiths J in *Lewis*, examples of purposes that have been identified as matters for investigation by an SPL include whether any of the directors or officers of a company breached their statutory and or fiduciary duties to the company; whether transactions between the company and a specified third party were voidable transactions within the meaning of s 588FE of the Act; any dealing with an asset owned legally or beneficially by the company to a specified third party; and any claim that the company may have or may have had against a specified third party. The relevant consideration is to assess the potential for such claims when considering whether to appoint a SPL — it is neither necessary nor appropriate to make findings on the potential claims in determining the application for the appointment of a SPL.

## ISSUES FOR DETERMINATION

38    The primary issue to be determined is whether the appointment of Mr Sheahan as a SPL with the limited powers now sought would be just and beneficial to the administration of Shield so as warrant that appointment being made.

39    In substance, the plaintiffs seek to have:

(1)    Mr Sheahan appointed as Shield SPL for the specific purposes of identifying the assets of Shield and investigating any claims which are or may be available to Shield or a liquidator of Shield against third parties;

(2)    Mr Sheahan's functions as SPL limited to obtaining orders for:

    (a)    delivery up of any books of Shield;

    (b)    conducting depositions or examinations; and

     (c)     obtaining orders for production in foreign jurisdictions;

(3)     Mr Sheahan's role as SPL constrained so that he is not otherwise able to:

     (a)     commence any proceeding in Shield's name or in his capacity as Shield SPL; or

     (b)     use any funds of Shield in respect of his appointment as SPL;

(4)     Mr Sheahan subjected to a requirement that in the exercise of his powers as SPL he confer with, take into account the views of, and report to, Mr Walker as the liquidator of Shield; and

(5)     Mr Sheahan granted liberty to apply to the Court in this proceeding.

40     Mr Walker supports the appointment of Mr Sheahan as Shield SPL on the terms now pressed by the plaintiffs.

41     Mr Sheahan and Mr Walker submit that it would be more efficient for Mr Sheahan to investigate the claims which may be available to Shield together with his other investigations. Undertaking investigations into the affairs of Shield in conjunction with the continuing investigations into the Binetter group will enable Mr Sheahan and Mr Walker to identify the claims which may be available to Shield and or Mr Walker and to thereafter consider what steps, if any, ought be taken to preserve those claims, and when such steps would need to be taken.

42     The interested parties submit that Mr Walker is best placed, being unaffected by any potential conflict of interest, to investigate any claims potentially available to Shield or its liquidator. The interested parties submit that it is premature and accordingly, not justified, for a SPL to be appointed to Shield before the validity of the relevant settlement deeds is determined.

43     As mentioned, the Commissioner and Polczynski Robinson neither consent nor oppose the application and ASIC did not seek to be heard, other than in relation to costs.

## CONSIDERATION

44     To accede to the plaintiffs' application, I must be satisfied by the plaintiffs that it is just to appoint Mr Sheahan as Shield SPL for the limited purposes identified and that in the particular circumstances of this application there is sufficient utility served by doing so to justify making the orders. For the reasons which follow, I am satisfied that it appropriate to exercise the Court's discretion to appoint Mr Sheahan as Shield SPL and make orders substantially as sought by the plaintiffs.

45      It is significant that this application arises out of the liquidation of entities in the Binetter group
        (which is a complex collection of many direct and indirectly related entities) and the alleged
        conduct of individuals and entities within the Binetter group in a scheme dishonestly to evade
        tax. The litigation between the parties to date has been hard fought. The competing camps are
        well-resourced. They appear to have an appetite for taking all available points. In making that
        observation, I do not overlook the fact of the 2018 settlements, which occurred well into the
        litigation.

46      Having regard to the litigation history to date, I regard it as likely that it will take some time
        for the parties to resolve the controversy surrounding the Binetter Entities' Deed (which may
        well extend to involve other deeds entered into in the 2018 settlement, including the Shield
        Deed) even if the plaintiffs pursue the SA Proceeding diligently. It is likely that the resolution
        of that controversy will require judicial determination. It is further likely that the party which
        is dissatisfied with the determination will pursue any appeal rights until exhausted. For this
        reason, I am not persuaded to accept the submission made on behalf of Andrew Binetter that
        the appropriate course is to dismiss the present application (without prejudice to any future
        application being brought if circumstances change) and allow the parties to litigate the efficacy
        of the Binetter Entities' Deed in the SA Proceeding and in the United States Proceeding and
        thereafter revisit the need for and role of any SPL to be appointed to Shield.

47      During the period in which the efficacy of the relevant deeds is tested, which may be lengthy,
        time will continue to run on any claims which may be relevantly affected by limitation periods
        and the investigative trail will continue to cool if investigative steps are deferred until the effect
        of the relevant deeds is finally determined. The submissions as to what claims may be affected
        by limitation periods are made at a high level of generality.

48      On the other hand, if it is ultimately determined that the Binetter Entities' Deed is valid and
        effective, then the plaintiffs will cease to have any interest in pursuing, let alone funding,
        Mr Walker or anyone else, to pursue claims by or against Shield. For this reason, it is possible
        that any investigations undertaken in the period pending determination of the dispute in relation
        to the Binetter Entities' Deed, may prove to lack any utility. In these circumstances, the
        interested parties submit that the intrusion occasioned by appointing Mr Sheahan for the
        purpose of facilitating these investigations is not justified.

49      Against this, the plaintiffs make the obvious retort that to await determination of the dispute
        about the settlement deeds may mean that any investigations are rendered ineffective because

of the expiration of limitation periods, even if the challenge to the deeds is ultimately successful.

50    The final form of orders proposed by the plaintiffs seeks to enable Mr Sheahan to progress investigations in the manner circumscribed by the orders during the period while the position in relation to the settlement deeds plays out, but to reserve to Mr Walker the ultimate decision as to whether to institute proceedings by or on behalf of Shield, unless the Court orders otherwise. In the event that Mr Walker does not commence proceedings, and Mr Sheahan seeks leave to do so, the Court would have to be satisfied at that time that the circumstances warranted leave being granted. The interested parties would have an opportunity to be heard on any application for leave by Mr Sheahan.

51    I am satisfied that there is utility in supplementing the appointment of Mr Walker as general purpose liquidator with the appointment of Mr Sheahan as Shield SPL. I am satisfied that the orders as now framed strike an effective balance between the findings in the primary reasons that on the one hand, Mr Sheahan is uniquely placed to undertake investigations into the potential claims available to Shield (at [225]) and on the other, the conflict of interest that Mr Sheahan has in connection with the Binetter Entities' Deed (at [227], [229] and [233]).

52    The plaintiffs' short minutes of order as presently framed permit Mr Sheahan to take steps to identify claims as efficiently as possible while otherwise retaining Mr Walker's involvement in relation to any litigation in Shield's name or on behalf of Shield given the ongoing uncertainty as to the impact of the settlement deeds on the course of the liquidation.

53    Mr Walker has deposed that in his view it would be most efficient and in Shield's best interests for Mr Sheahan to be appointed as an additional liquidator on the basis that Mr Sheahan has gained knowledge of matters, from his appointment as liquidator of the corporate plaintiffs, which would assist with the efficient conduct of the necessary investigations. Mr Walker has further deposed that he will be assisted in his consideration of the Shield Deed and any claims with respect to it by Mr Sheahan being appointed as Shield SPL to undertake the investigations and other tasks contemplated in the final iteration of the plaintiffs' proposed orders. Mr Walker deposed that he was considering any claims that could or should be made with respect to the Shield Deed including whether a claim should be brought to set aside the Shield Deed and any claims for breaches of Andrew Binetter's duties as the director of Shield as well as voidable transaction claims under the Act with respect to Shield's entry into the Shield Deed. Mr Walker deposes that he is mindful that the limitation period in relation to relief in relation to the Shield

Deed may soon elapse. The evidence does not reveal whether Mr Walker has taken any steps to protect against the expiration of the limitation period.

54    There is a lack of certainty as to the claims which may be available to Shield and accordingly it is difficult to assess the limitation periods which may be involved. A factor in favour of making the SPL appointment is to enable the claims to be identified and assessed as soon as possible.

55    I consider that the appointment of Mr Sheahan on the terms now contemplated will further the purpose for which Shield was reinstated and adequately mitigate the risk occasioned by Mr Sheahan's conflict arising from his multifaceted roles in relation to the Binetter group. If any claim(s) is ultimately instigated by Shield or on Shield's behalf concerning the validity of any of the settlement deeds, those claims will be under the control of Mr Walker, unless Mr Sheahan obtains leave to bring such claims pursuant to a further order of this Court, as outlined above.

56    While I accept the interested parties' submissions that the powers to be conferred on the Shield SPL are significant powers, I am satisfied that it is appropriate and efficient to confer them on Mr Sheahan as Shield SPL who will be required to consult with and keep Mr Walker informed. I am satisfied that there is utility and efficiency in the investigative work that has been identified being conducted by Mr Sheahan rather than Mr Walker, given Mr Sheahan's familiarity with the Binetter group and the ongoing United States Proceeding and his other investigations. There is a consistency of interests between the relevant entities in relation to these investigations.

57    I have taken into account the position of the Commissioner and the reason why the Commissioner has adopted the position which was ultimately conveyed to the Court. I regard the Commissioner's position as relevant but it is effectively a factor that is neutral, with the Commissioner neither supporting nor opposing the appointment. I have attached greater weight to the position taken by Mr Walker, who supports the application.

58    Being satisfied that the plaintiffs have identified with appropriate specificity the special purpose for which the appointment is sought; that the appointment of Mr Sheahan as SPL on the terms contemplated will promote the integrity, objectivity and impartiality of the administration of Shield under Mr Walker's control; that the special purpose is substantial and serious; and, finally, that the contemplated investigations are in the public interest given the

overarching milieu of dishonest tax evasion in which they are arise, I will make orders appointing Mr Sheahan as Shield SPL.

59    The last issue which it is necessary to address is the issue of costs. The plaintiffs seek to have the issue of costs reserved. I do not think that is appropriate. The costs in relation to the application to reinstate Shield were not agreed and determination of those costs has awaited determination of this application. I will indicate my preliminary view on costs and afford the parties a short period within which to seek alternative orders should they wish to do so.

60    Having regard to the course of this proceeding, the progressive refinement of the plaintiffs' positions in relation to the relief sought by them and the basis upon which they contended that they were entitled to the relief they claimed and the contribution made by the interested parties by exposing the potential for a material conflict of interest if Mr Sheahan was appointed as the general liquidator of Shield, my preliminary view is that the circumstances in this case are sufficiently exceptional to warrant an award of costs to the interested persons. However, I am not satisfied that the interested parties should recover the whole of their costs taking into account the limited success they enjoyed on the primary application and the fact that the reinstatement application was necessitated by Andrew Binetter allowing Shield to be deregistered as a result of administrative default. I am otherwise satisfied that the interested persons acted in these proceedings in a way that was efficient, and which effectively eliminated duplication as between the two of them. I have not overlooked the fact that an early agreement as to the costs orders that should follow from the primary reasons fell away when the interested parties changed their position. In the scheme of the subsequent conduct of the proceeding, I do not attach much weight to that factor. Looking at the matter wholistically and with a broad brush, my preliminary view is that the plaintiffs are entitled to an order that their costs be costs in the liquidation of Shield and that the interested parties are entitled to have 50% of their costs on both applications as costs in the liquidation of Shield.

**CONCLUSION**

61    For these reasons, I will make orders appointing Mr Sheahan as Shield SPL with closely confined powers to be exercised for the express purposes identified and requiring Mr Sheahan to liaise closely with Mr Walker. I will also make orders enabling any party or person wishing to seek an alternative costs order a short period within which to do so.

I certify that the preceding sixty-one (61) numbered paragraphs are a true copy of the Reasons for Judgment of the Honourable Justice Cheeseman.

Associate:

Dated:        9 January 2025

# SCHEDULE OF PARTIES

**NSD1023 of 2022**

**Plaintiffs**

| | |
|---|---|
| Fourth Plaintiff: | RAWBIN FINANCES PTY LIMITED (IN LIQUIDATION) ACN 140 576 549 |
| Fifth Plaintiff: | MR JOHN SHEAHAN IN HIS CAPACITY AS LIQUIDATOR OF THE FIRST TO FOURTH PLAINTIFFS |